DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded Athens County Children Services (ACCS) permanent custody of Anna Marie Anderson and Donald Edgell.
 {¶ 2} Appellant, Mary Delancy, the natural mother of the children, assigns the following error:
"The trial court's finding that Anna Marie Anderson and Donald Edgell should be placed in the permanent custody of the Athens County Children Services Board and that Mary Delancy's parental rights should be terminated is not supported by the weight and sufficiency of the evidence. The decision is neither supported by the evidence submitted at trial nor is that evidence `clear and convincing' as required by R.C.2151.414(E)."
 {¶ 3} On January 15, 2002, appellant and her husband, Bernard Delancy, were arrested for operating a methamphetamine lab in their home where they lived with the two children. The authorities subsequently charged appellant and Delancy with child endangering and other drug-related charges.
 {¶ 4} On February 14, 2002, ACCS sought temporary custody of the children. ACCS alleged that the children were living in "dirty, filthy and hazardous conditions. The manufacture of methamphetamine causes dangerous vapors, hazards of explosions and exposure to dangerous chemicals." ACCS further alleged that both children were covered with lice and that "Donald had herpes sores on his mouth and appeared malnourished." On February 14, 2002, the court placed the children in ACCS's temporary custody.
 {¶ 5} On October 24, 2002, appellant was convicted of illegal possession of chemicals, in violation of R.C. 2925.04. The court sentenced her to three years imprisonment.
 {¶ 6} On January 24, 2003, ACCS filed a motion for permanent custody. On March 5, 2003, the trial court held a permanent custody hearing. At the hearing, ACCS caseworker Kathi Van Meter stated that appellant's last visit with her children occurred on August 19, 2002. VanMeter stated that appellant had visitation scheduled after that time, but that appellant did not attend the visitation. VanMeter testified that appellant's last contact with the children occurred in November of 2002, when she wrote the children a letter.
 {¶ 7} VanMeter further stated that she does not believe that the children have a strong bond with appellant. She testified that when the children were first removed from appellant's care, they did not ask to see her, but asked to see their grandparents. VanMeter stated that appellant did not actively interact with the children. She stated that during the visitations, Donald played with other families or with his paternal grandfather. One time Donald told VanMeter that "he'd rather shovel horse poop than visit with" appellant. VanMeter explained that both children interact well with their foster families and that Anna Marie's relationship with her foster parents is "like a family."
 {¶ 8} VanMeter stated that she was concerned about appellant living with Delancy because the children have talked about physical abuse. The children related an incident when Delancy hung Donald on a nail by his underwear. When his underwear ripped, Donald fell onto a picnic table and then fell to the concrete ground.
 {¶ 9} VanMeter testified that appellant did not comply with every aspect of the case plan: (1) appellant did not follow through with drug and alcohol recommendations; (2) in June of 2002, appellant tested positive for methamphetamine, marijuana, and amphetamines; (3) appellant did not resolve her substance abuse problem; and (4) appellant did not maintain a safe home free from physical abuse and substance abuse.
 {¶ 10} Appellant testified that she currently is incarcerated at the Marysville prison. She stated that while in prison, she completed a drug and alcohol class. She stated that she has not communicated with the children because she did not know the addresses or telephone numbers of the foster parents. She claimed that she bought Christmas gifts for the children and had her family members give the gifts to the children.
 {¶ 11} The court interviewed the children. The children stated that they were sad that they would not be able to live with their mother. They claimed that they liked living with their mother but not with "Bernie." Donald stated that Delancy hurts their mother. The children advised the court that they last heard from their mother before she went to jail. They stated that they received some birthday cards and letters, but that their mother did not send them Christmas gifts.
 {¶ 12} On July 3, 2003, the trial court granted ACCS permanent custody.[1] The court found that the best interests of the children would be served by granting ACCS permanent custody. The court found that the children's fathers had abandoned them and that the children could not or should not be placed with appellant within a reasonable time. The court stated:
"While awaiting felony trial on drug charges she continued to use drugs, failed a drug screen, refused drug screens, and failed to avail herself of counseling. Because of her criminal conduct she has been unable to adequately support her children financially or directly. She missed many opportunities to communicate with her children, choosing instead to communicate with Bernard Delancy. Her announced desire to continue her relationship with Mr. Delancy demonstrates her unwillingness to provide an adequate, permanent home for the children. The mother's manufacturing and use of drugs while the children were in her care; her subsequent continued use of drugs; her unwillingness to participate in drug counseling; and her continued relationship with Bernard Delancy are relevant factors requiring termination of her parental rights."
 {¶ 13} The court further found that ACCS used reasonable efforts:
"The original case plan and subsequent amendments provided the opportunity for [appellant] to rehabilitate herself and create an appropriate living environment for herself and her children. Case management services and coordination of counseling services were arranged by the agency, but [appellant] was unwilling to meaningfully participate. She did not even avail herself of all the opportunities to visit her children."
 {¶ 14} The trial court thus granted ACCS permanent custody. Appellant filed a timely notice of appeal.
 {¶ 15} In her sole assignment of error, appellant argues that the weight of the evidence does not support the trial court's decision to grant ACCS permanent custody. In particular, she asserts that the trial court's finding that she abandoned her children is not supported by the record. Appellant also argues that the evidence does not show that the children cannot or should not be placed with her within a reasonable time.
 {¶ 16} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In reR.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 17} R.C. 2151.413 permits a public children services agency that has temporary custody of a child to file a motion requesting permanent custody of the child. In considering a motion filed pursuant to R.C. 2151.413, the trial court must follow the guidelines set forth in R.C. 2151.414.
 {¶ 18} R.C. 2151.414(A)(1) requires the trial court to hold a hearing regarding the motion for permanent custody. The primary purpose of the hearing is to allow the trial court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1).
 {¶ 19} The decision that the child is an abused, neglected, or dependent child may not be re-adjudicated at the hearing. See id. Once a child is adjudicated dependent as defined in R.C. 2151.04, the best interests of the child become the trial court's primary concern when determining whether granting permanent custody is justified. Cunningham, supra.
 {¶ 20} When reviewing a motion for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
"(A) To provide for the care, protection, and mental and physical development of children * * *;"
* * * *
"(C) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety." R.C. 2151.01.
 {¶ 21} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 22} In reviewing whether the trial court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id. Furthermore, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id.
 {¶ 23} Moreover, deferring to the trial court on matters of credibility is "crucial" in cases involving children, "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159.
 {¶ 24} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:
"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
"(b) The child is abandoned.
"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 25} In the case at bar, appellant does not dispute that the children's fathers have abandoned them. Rather, she asserts that the trial court erred by finding that she abandoned the children and that the children cannot or should not be placed with her within a reasonable time. Our review of the trial court's judgment entry, however, does not lead us to believe that the court based its decision upon appellant's abandonment of her children, as R.C. 2151.414(B)(1)(b) contemplates. Rather, we believe the trial court's reference to appellant's failure to communicate with her children relates to its findings under R.C.2151.414(E) that the children cannot or should not be placed with appellant within a reasonable time. Thus, we will limit our review to whether the trial court erred by finding that under R.C. 2151.414(E), the children cannot or should not be placed with appellant within a reasonable time.
 {¶ 26} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
"* * *
"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
"(10) The parent has abandoned the child.
"* * *
"(16) Any other factor the court considers relevant."
 {¶ 27} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738; In re Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 28} In the case at bar, we believe that the record contains ample competent and credible evidence to support the trial court's determination that the children cannot or should not be placed with appellant within a reasonable time. The trial court found that several R.C. 2151.414(E) factors existed so as to mandate a finding that the children cannot or should not be placed with appellant within a reasonable time. First, the court determined that the fathers abandoned the children, thus satisfying R.C. 2151.414(E)(10). Second, the court found that R.C. 2151.414(E)(1), (2), (4), and (16) supported a finding that the children cannot or should not be placed with appellant.
 {¶ 29} With respect to R.C. 2151.414(E)(1), the court noted that appellant failed to maintain a drug-free lifestyle and to provide a stable, nurturing home for the children.
 {¶ 30} The court further determined that under R.C. 2151.414(E)(2), appellant's chemical dependency is so severe that it prevents her from providing an adequate permanent home for her children at the present time and within one year after the permanent custody hearing. As appellee notes, the record shows that: (1) appellant's dependence on drugs "was so great that she went to the time and trouble of learning how to manufacture her own methamphetamine"; (2) that appellant did not sell any of it, but instead, she and her husband used all of it; and (3) "[a]ppellant's dependence was so intense, that after she was arrested and jailed for manufacturing her methamphetamine, when she was released, she once again harkened to the siren song and took so much methamphetamine that she tested off the scale."
 {¶ 31} The court also determined that R.C. 2151.414(E)(4) applied, in that appellant has shown a lack of commitment to the children and she is unwilling to provide her children with an adequate permanent home. Appellant was able to send monthly letters to her children, free of charge, but did not do so. Instead, she chose to communicate with Delancy. Additionally, appellant stated that she will continue to live with Delancy, the man who abused the children and with whom she manufactured methamphetamine.
 {¶ 32} Lastly, the court determined that appellant's drug use and continued relationship with Delancy were R.C. 2151.414(E)(16) "relevant factors" that supported its finding that the children cannot or should not be placed with her within a reasonable time.
 {¶ 33} Consequently, we believe that the record contains substantial, competent and credible evidence to support at least four of the R.C. 2151.414(E) factors. Therefore, the trial court did not err by determining that the children cannot or should not be placed with appellant within a reasonable time.
 {¶ 34} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] On May 5, 2003, appellant filed a motion to dismiss ACCS's permanent custody motion. She alleged that she obtained judicial release and thus is no longer imprisoned. The trial court did not explicitly rule on her motion and did not refer to the motion in its entry granting ACCS permanent custody. We therefore presume that the court implicitly overruled appellant's motion. See, generally, Roszak v. PrincessCruises, Inc. (1993), 90 Ohio App.3d 109, 628 N.E.2d 77. We additionally note that in its decision granting ACCS permanent custody, the court did not rely solely upon appellant's incarceration, but instead relied upon multiple factors to support its decision.